UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ROBERT L. NICHOLS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-CV-068 JD |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Robert L. Nichols applied for social security disability benefits, citing his mild mental retardation as the primary basis for his disability. The Commissioner of Social Security ultimately denied Mr. Nichols' claim, so pursuant to 42 U.S.C. § 405(g), Mr. Nichols brought this action seeking judicial review of the Commissioner's decision. For the reasons that follow, the Court affirms the Commissioner's decision.

## I. FACTUAL BACKGROUND

Mr. Nichols was 45 years old at the time he applied for disability benefits. He has dealt with mild mental retardation throughout his life, though he graduated from high school with the assistance of special education classes. Prior to applying for disability benefits, Mr. Nichols had worked for about 25 years as a kitchen helper, but lost that job when the cafeteria he worked at closed. He then worked for about a year in a janitorial position before losing that job, at which time he applied for disability benefits. In addition to his intellectual disability, Mr. Nichols has a mild articulation disorder that affects his speech. He also has other minor physical conditions, but he does not argue that they affect his ability to work. In the course of his disability claim, Mr. Nichols was examined by a psychologist and a speech and language pathologist, and his records

were also reviewed by a number of agency consultants. After initially denying Mr. Nichols' claim, the Commissioner held a hearing before an administrative law judge. Mr. Nichols and his mother testified at the hearing, as did a vocational expert.

On December 10, 2012, the ALJ issued a decision finding that Mr. Nichols was not under a disability as defined under the Social Security Act. The ALJ found at step one that Mr. Nichols was not engaging in substantial gainful activity, and at step two, that Mr. Nichols had the severe impairment of mild mental retardation. At step three, the ALJ thoroughly considered whether Mr. Nichols met any of the listings under Listing 12.05, Mental Retardation, and concluded that he did not. In particular, the ALJ found that Mr. Nichols did not have a severe speech or language impairment apart from his mild mental retardation, as may have satisfied paragraph C of that Listing. At steps four and five, the ALJ found that Mr. Nichols was able to perform his past work as a kitchen helper and that he was able to perform other jobs in the national economy. Therefore, the ALJ concluded that Mr. Nichols was not disabled. The Appeals Council denied Mr. Nichols' request for review, so Mr. Nichols timely filed this action for judicial review of the denial of his claim.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). A court must affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about

the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion ex rel Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. ANALYSIS

Mr. Nichols contends that he is disabled within the meaning of the Social Security Act, and that the Commissioner erred in denying his claim. Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in

3

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, in between steps three and four, the ALJ must then assess the claimant's Residual Functional Capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the RFC to determine whether the claimant can perform his past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs

in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Mr. Nichols does not assert any error relative to the ALJ's findings at steps four or five, but he argues that the ALJ should not have reached those steps, as he should have found that Mr. Nichols met or equaled a listing at step three. In particular, Mr. Nichols argues that the ALJ erred in finding that he did not meet or equal Listing 12.05C.[1] That Listing reads, in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> . . . .

20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.05 ("Listing 12.05").[2] Thus, there are essentially three elements a claimant must satisfy to meet or equal this Listing: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning that manifested prior to age 22; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

---

[1] The ALJ also considered whether Mr. Nichols met any of the other paragraphs of Listing 12.05, but Mr. Nichols does not challenge any of those findings in this appeal.

[2] Since the date of the ALJ's decision, this Listing has been revised to replace references to "mental retardation" with "intellectual disability." Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013). Because the ALJ's decision and the parties' briefs use the terminology as it existed at the time of the decision, the Court does too.

5

*Id.*; *see Adkins v. Astrue*, 226 F. App'x 600, 604–05 (7th Cir. 2007). There is no dispute that Mr. Nichols meets the second element, as he has had multiple IQ scores in the 60s. Thus, the parties address only the first and third elements, and the Court considers each in turn.

A. **Deficits in Adaptive Functioning**

Mr. Nichols first argues that the ALJ erred in finding that he did not have sufficient deficits in adaptive functioning to meet this element. In particular, he notes that three different experts opined that Mr. Nichols met this element, and the ALJ did not even acknowledge that aspect of those experts' opinions. For its part, the Commissioner argues that the ALJ properly found that Mr. Nichols did not meet this element, though the Commissioner does not address the expert opinions. Both parties' arguments miss the mark, though, because the ALJ never actually made a finding as to whether Mr. Nichols met this element. Rather, he noted that "[i]t is not at all clear" that Mr. Nichols met this threshold element, so he proceeded to consider whether Mr. Nichols satisfied any of paragraphs A through D of the Listing. (R. 23–24 ("While it is unclear whether the threshold criteria are met, discussion of the remaining Listing criteria is appropriate.")). Finding that he did not, the ALJ concluded that Mr. Nichols did not meet or equal the Listing, without resolving whether Mr. Nichols satisfied this threshold element. Thus, even if substantial evidence might have supported a finding that Mr. Nichols did not satisfy this element (which is suspect), the ALJ made no such finding, and the Court cannot affirm the Commissioner's decision on a basis not offered by the ALJ. *SEC v. Chenery Corp.*, 332 U.S. 194 (1949); *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (noting that *Chenery* "requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself"). Accordingly, the Commissioner's decision must stand or fall based on the only finding the ALJ actually made in concluding that Mr. Nichols did not meet this Listing, which was that he did not satisfy the third element.

B.  **Other Mental Impairment Imposing an Additional and Significant Work-Related Limitation of Function**

The third element of Listing 12.05C is that the claimant have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." For clarity, it is worth breaking this element out further into its own subparts. Specifically, to satisfy this element, (a) the claimant must have an impairment other than mental retardation; (b) that impairment must be "significant," which is equivalent to "severe"; and (c) the limitations imposed by that severe impairment must be "additional" to those imposed by the mental retardation. As to the first subpart, other intellectual or related impairments could potentially constitute "other" impairments, so long as they are separate from—and are not merely symptoms or characteristics of—the mental retardation. *See* SSR 98-1p, 1998 WL 147011, at *3 (Mar. 30, 1998) (noting, in the context of the child's version of this listing, that while mental retardation may often cause speech delays, a speech impairment may constitute an "other" impairment if the "child's speech development is not even commensurate with his/her general intellectual functioning"); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569–70 (7th Cir. 2003) (considering "speech and language delays" as potential other impairments).

Here, Mr. Nichols contends that he satisfies this element because "due to his speech intelligibility and receptive and expressive skill, he could not properly interact with the public." [DE 18 p. 17]. The ALJ disagreed, finding after a thorough discussion that Mr. Nichols did not have any severe impairments other than mild mental retardation. In arguing that the ALJ erred, Mr. Nichols presents a variety of arguments. He first addresses the various evidence cited by the ALJ in support of his conclusion, and attempts to distinguish or minimize that evidence such that it does not add up to the substantial evidence required to justify the ALJ's finding. In the course of that argument, Mr. Nichols also argues that the ALJ failed to address various other pieces of

7

evidence that might have supported a contrary finding. Finally, he argues that the ALJ should have consulted another expert to determine whether his language comprehension deficits were related to or were separate from his mild mental retardation.

As to Mr. Nichols' argument that the evidence the ALJ cited in support of this finding did not amount to substantial evidence, the Court disagrees. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner*, 478 F.3d at 841. The ALJ's finding here was amply supported by the evidence. In fact, every medical expert who expressed an opinion as to whether Mr. Nichols had another severe impairment came to the same conclusion: he did not. As thoroughly discussed by the ALJ, those opinions were consistent with the evidence, and the ALJ was justified in relying on them.

Mr. Nichols was examined by Dr. Bundza on October 24, 2008. (R. 22, 362). Dr. Bundza observed that Mr. Nichols had "basically adequate verbal communication skills" and that his speech was usually understood, and Dr. Bundza did not include any functional occupational limitations relative to speech or language deficits. (R. 22, 365, 367). As the ALJ also noted, Dr. Bundza's diagnosis was "mild mental retardation."[3] (R. 28, 367). Mr. Nichols also underwent a physical examination by Dr. Bacchus, who noted that Mr. Nichols' "speech is clear." (R. 22, 371). Mr. Nichols was also examined on April 13, 2011 by Peg Maginn, a speech and language pathologist. Ms. Maginn reported that Mr. Nichols' speech was 95% intelligible, even without context cues, and that his speech rate, fluency, and voice quality were within normal limits. (R.

---

[3] Dr. Bundza actually opined that "this is a fairly straightforward case of mental retardation." (R. 367).

8

22, 375–76). Ms. Maginn diagnosed Mr. Nichols with a "mild articulation and expressive language disorder." (R. 22, 376).

Various agency experts then reviewed these materials, and none of them found that Mr. Nichols had another severe impairment. Specifically, Dr. Hoke reviewed Dr. Maginn's report on April 15, 2011, and concluded that the impairment of Mr. Nichols' communication functions was not severe. (R. 22, 380). In addition, on April 19, 2011, Dr. Hill completed a mental residual functional capacity assessment and a form entitled Psychiatric Review Technique, in which she evaluated whether Mr. Nichols met any listings related to mental disorders. Dr. Hill indicated that Mr. Nichols met the first and second elements of Listing 12.05C, in that he had significantly subaverage general intellectual functioning with deficits in adaptive functioning and he had a valid IQ of 60 through 70. However, she did not find that Mr. Nichols had "a physical or other mental impairment imposing an additional and significant work-related limitation of function." (R. 385). On June 17, 2011, another agency expert reviewed Dr. Hill's report and concurred. (R. 22, 400). Thus, as the ALJ noted, the agency reviewers found that Mr. Nichols did not meet this element.[4] (R. 22, 24).

In further support of his finding, the ALJ also cited Mr. Nichols' employment history and records. Specifically, he noted that Mr. Nichols was able to successfully complete unskilled work for 25 years, that his most recent employer did not note any problems relative to speech or language deficits, and that records of his job search assistance indicated that his primary impediment to finding a job was his difficulty with multi-tasking. (R. 22). Though, as Mr.

---

[4] Two other agency consultants also reached the same conclusions in 2010, though the ALJ did not cite those reports in support of this finding. (R. 351 (indicating that Mr. Nichols has mild mental retardation, but that he does not satisfy Listing 12.05C), 361 (affirming the previous assessment)).

Nichols' argues, his prior employment did not involve interactions with the public, this evidence is still consistent with a lack of a severe speech or language impairment, and lends at least some support to the ALJ's finding. In light of this quantity of evidence, most notably including multiple expert opinions, the Court has no hesitation in concluding that this was enough to constitute substantial evidence for the ALJ's finding that Mr. Nichols did not meet the third element of this listing.

Mr. Nichols also relatedly argues that the ALJ failed to consider certain evidence that may have led to a different finding. An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection, and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). An ALJ is not required to address every piece of evidence or testimony presented, though. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

On this point, Mr. Nichols first argues that the ALJ failed to consider certain test results contained in Dr. Bundza's and Ms. Maginn's reports, such as his score on a portion of the Vineland-II Adaptive Behavior Scales administered by Dr. Bundza, and the results of the Oral and Written Language Skills (OWLS) test administered by Ms. Maginn. However, even though the ALJ did not address these particular facts, he considered and discussed the opinions and conclusions expressed by Dr. Bundza and Ms. Maginn based on those facts, thus implicitly considering those subsidiary facts. In addition, the ALJ would have had no basis for reaching any conclusions of his own about the meaning of those particular test results—for those medical

conclusions, he properly relied on Dr. Bundza and Ms. Maginn to interpret the meaning of those tests, and on the agency consultants to assess the severity of any resulting limitations. By asking the ALJ to single out these facts to reach a conclusion contrary to those experts, Mr. Nichols is essentially asking the ALJ to play doctor, just in his favor. That would be inappropriate, and the ALJ need not have cited this particular evidence to show he adequately considered it.

Mr. Nichols further argues that the ALJ failed to consider another subsidiary fact in Dr. Bundza's report, in that his aunt reported that he is self-conscious about his speech problem and avoids interactions with strangers. That was a minor point, though, and being contained in Dr. Bundza's report, would have been considered by Dr. Bundza, on whom the ALJ relied. In addition, the ALJ considered similar testimony by Mr. Nichols and his mother about his interactions with the public, (R. 25, 27), so the ALJ adequately addressed this evidence.

Mr. Nichols also argues that the ALJ failed to consider portions of the vocational rehabilitation records, which documented assistance Mr. Nichols received in seeking a new job. For example, one of those records listed "receiving information," "written communication," and "verbal communication" as among Mr. Nichols' functional limitations, and listed communication skills as among his barriers to employment. (R. 453–55). However, while the ALJ did not specifically discuss that aspect of the records, he discussed the vocational records several times, and discussed Mr. Nichols' communications functions at length, so the Court finds that the ALJ did not err by failing to address these specific facts. In particular, in addressing Mr. Nichols' argument that he had a severe speech or language impairment, the ALJ noted that the vocational rehabilitation records indicated that Mr. Nichols' primary limitation in finding a job was his difficulty with multi-tasking. (R. 22). Mr. Nichols even concedes that this was an accurate characterization of those records. [DE 18 p. 22]. The ALJ also discussed Mr. Nichols' mother's

11

testimony on this same point about his communication difficulties and the extent to which she believed they were limiting. (R. 27). The ALJ also noted, though, that Dr. Bundza opined that Mr. Nichols' communication skills were "basically adequate," that Ms. Maginn noted that Mr. Nichols was "readily able to communicate basic wants and needs," and that the agency consultant believed that Mr. Nichols' functional language skills were adequate. (R. 22, 28). That more than satisfies the ALJ's obligation to at least minimally articulate his handling of this line of evidence, even if he did not mention these specific facts. The Court therefore finds that the ALJ did not err in that regard.

Next, Mr. Nichols argues that the ALJ erred by failing to consult an additional expert on whether Mr. Nichols had a mental impairment other than mental retardation. Specifically, he believes that another expert was necessary to determine whether the conditions identified in Ms. Maginn's report were separate from his mild mental retardation, and could thus constitute "other" mental impairments. *See* SSR 98-1P, 1998 WL 147011 (noting that if speech development is not even commensurate with an individual's general intellectual functioning, it "would be regarded as an impairment separate from the mental retardation that would satisfy the criterion . . . for a physical or other mental impairment"). The basis for this argument is a comment by Ms. Maginn in her report, where she stated:

> As is apparent from test results noted, the claimant has significantly delayed language comprehension and expressive language skills. It is not known whether his comprehension skills are commensurate with his overall intellectual level because no psychological testing was available today. However, he is known to have participated in special education services while in school.

(R. 375). It appears that Ms. Maginn was indicating in this statement that it was unclear whether Mr. Nichols' language deficits were related to an intellectual disability or whether they may have been separate conditions.

It was unnecessary for the ALJ to consult another expert to clarify that point, though, because the ALJ found that any impairments from those conditions were not severe:

> Following Ms. Maginn's examination, the State Agency determined that a severe speech or language impairment was not supported. The consultant noted that speech was 95 percent intelligible, and that Ms. Maginn summarized that the claimant was "readily able to communicate basic wants and needs." The State Agency determined that functional language skills are adequate (Exhibit 10F), and the Administrative Law Judge agrees.

(R. 22). Thus, it ultimately did not matter whether these constituted "other" impairments; since they were not severe, they would not have satisfied this element of the listing anyway.[5] Therefore, the ALJ was not required to have consulted an additional expert to clarify that non-dispositive point.

Finally, the Court notes that Mr. Nichols spends much of his briefing arguing that he has a limitation relative to his ability to interact with the public, and that that limitation is severe. However, even if Mr. Nichols could show that his speech or language deficits caused that limitation and that it rose to a severe impairment, he still would not meet the Listing, as it would not be an "additional" limitation. As noted, Listing 12.05C requires, in part, an "additional . . . work-related limitation of function." In other words, the limitation must not only be caused by a severe impairment other than mental retardation, the limitation must be in addition to—not duplicative of—the limitations caused by mental retardation. Otherwise, it would not further erode the scope of available jobs beyond those available based on the claimant's mental retardation and IQ, and thus would not justify a presumption of disability. *See Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006) (noting that because there are still several types of

---

[5] The Court also notes that multiple other experts to whom the psychological testing *was* available concluded that Mr. Nichols did not have another severe mental impairment. (R. 385, 399–400).

jobs that a person with an IQ in this range could perform, the Listing "requires an additional impairment in order to establish disability").

Here, the limitation that Mr. Nichols argues is severe is that he "can tolerate interacting with the public, but cannot tolerate responsibility for addressing complaints or other concerns, especially involving problem-solving." [DE 31 p. 2]. However, the ALJ included this precise limitation as part of Nichols' RFC, and he expressly attributed it to Nichols' mild mental retardation:

> The residual functional capacity further provides that although the claimant is able to tolerate work with the public, he is unable to address complaints or concerns, especially problem solving. While the claimant's attorney interpreted this limitation to reflect language and speech impairment, the Administrative Law Judge wants to make it clear that this is not the intention. . . . Given the claimant's mental deficits, and due to mild mental retardation he would be unable to engage in the sort of problem solving required to effectively address customer complaints or concerns on a regular basis. Once again, this limitation has been included to accommodate problem-solving deficits related to cognitive impairment, and must not be interpreted to suggest difficulties related to speech impairment, as alleged by the claimant's attorney.

(R. 29). Mr. Nichols does not argue that his mild mental retardation does not justify this limitation or that the ALJ erred in imposing this limitation for that reason.[6] Therefore, even if he could show that his speech and language impairments also justified this particular limitation and that they were severe, he would still not have an "*additional* . . . work-related limitation of function." For that reason as well, Mr. Nichols has failed to show that the ALJ erred in concluding that he did not meet this Listing.

Accordingly, the Court concludes that the ALJ's finding that Mr. Nichols did not satisfy this element of the Listing was supported by substantial evidence. A claimant must meet or equal

---

[6] In fact, he acknowledges in his brief that two agency consultants attributed the moderate limitations in his ability to interact with the general public to his mild mental retardation. [DE 18 p. 21–22 (citing R. 344)].

each element of a listing in order to receive a presumption of disability at step three, *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."), so the ALJ appropriately found that Mr. Nichols did not meet or equal Listing 12.05C. The ALJ therefore did not err in concluding at step three that Mr. Nichols did not meet or equal any listing, and thus proceeding to steps four and five, where he found that Mr. Nichols was not disabled.

## IV.  CONCLUSION

Mr. Nichols is undoubtedly limited in the employment opportunities available to him, and his efforts to maintain and pursue employment despite his limitations are commendable. However, the Commissioner's finding that he is not disabled as defined under the Social Security Act was supported by substantial evidence. Accordingly, the Court AFFIRMS the Commissioner's denial of Mr. Nichols' claim for disability benefits. The Clerk is DIRECTED to enter judgment in favor of the Commissioner.

SO ORDERED.

ENTERED:  August 25, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court